UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KELLY MCGLYNN, on behalf of herself and all others similarly situated,

        Plaintiffs,

  v.

SOLAWAVE INC.

        Defendant.

Case No.: 23-cv-8375

**COMPLAINT**

Plaintiff Kelly McGlynn, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, Kravit Smith LLP, states for her Complaint against Solawave Inc. ("Solawave" or "Defendant"), as follows:

**PRELIMINARY STATEMENT**





1.	The skin care market in the United States has ballooned to over $20 billion in revenues last year and features some of the most competitive and outlandish claims in retail marketing.  One of the most aggressive and financially successful entrant in that market is the Solawave facial tool launched in September 2020.

2.	This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that Solawave has made in connection with the sale of its purportedly "clinically proven" facial tool.  This action does not seek to establish that the Solawave facial tool is ineffective.  Indeed, it may improve skin.  Instead, this action will establish that Solawave falsely claims that its facial tool is "clinically proven" to materially improve skin in the manner set forth above (the "Clinically Proven Claim") when in fact the Solawave facial tool have never been clinically tested, much less has it been "clinically proven" to improve skin in the manner in which it marketed.

3. As the National Advertising Division of BBB National Programs (the "NAD")[1] has repeatedly stated, representations that a product's efficacy has been "clinically proven" must closely match the underlying evidence because they are a promise that there is scientific evidence that establishes the truth of the claim. Such a claim conveys an especially strong message to consumers.

4. Based on Solawave's Clinically Proven Claim, Plaintiff and consumers like her purchased the Solawave tool that they believed was clinically proven to improve skin in a multiple of ways, and paid a premium for the Solawave tool based on Solawave's Clinically Proven Claim. Plaintiff and her fellow class members have been injured because they purchased Solawave tools that they would not have otherwise purchased and/or they paid a premium for Solawave tools that were not clinically proven to improve skin conditions in the manner in which they were marketed.

## THE PARTIES

5. Plaintiff Kelly McGlynn is an individual who resides in Port Washington, New York.

6. Defendant Solawave Inc. is a Delaware corporation with its principal address at 3641 Holdrege Ave, Unit B, Los Angeles, CA 90016-4305.

7. Solawave claims that it is a Los Angeles, California-based skincare brand dedicated to developing innovative and efficient skincare tools and topicals for all genders,

---

[1] The NAD is an independent system of self-regulation established by the advertising industry in 1971 and designed to build consumer trust in advertising. It reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative. The NAD's decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business. An advertiser's failure to participate in the NAD's review of its advertising and/or failure to comply with the NAD's recommendations and decision results in the matter being referred to the appropriate regulatory agency, which is typically the Federal Trade Commission. NAD referrals receive priority treatment from the Federal Trade Commission.

ethnicities, and skin tones. Solawave manufactures, packages, markets, distributes, and sells its Solawave 4-in-1 tool both online directly to consumers and through other online and brick-and-mortar retail stores, such as Amazon, over 600 Ulta Beauty stores, Saks Fifth Avenue, Neiman Marcus, Nordstrom and through Gwyneth Paltrow's Goop website.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A). The damages to the potential class members in this action exceed the sum or value of $5,000,000, because Solawave's revenues attributable to sales in New York State are estimated to exceed $3,000,000 over the last three years, which if trebled under N.Y. Gen Bus. L. 349(h) would exceed $9,000,000.

9. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

10. This Court may exercise jurisdiction over Solawave because Solawave has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Solawave has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## CHOICE OF LAW

12.     New York law governs the state law claims asserted herein by Plaintiff Joanne Noriega and the New York class she seeks to represent.

13.     New York has a substantial interest in protecting the rights and interests of New York residents against wrongdoing by companies that market and distribute their products within the State of New York.

## FACTUAL BACKGROUND

14.     The Solawave tool or wand was launched in or about September 2020 and has been described and marketed as follows, among many other ways, making the Clinically Proven

Claim:



According to Solawave, the "4 non-invasive technologies" are as follows:



15.     Consumers who are concerned about health and beauty are particularly vulnerable targets for unscrupulous manufacturers and advertisers.  Such consumers are willing to pay a premium for health and beauty products that are scientifically proven to be effective.  In an overcrowded marketplace where beneficial health claims are ubiquitous, being able to demonstrate the efficacy of a product is critical.  Unsurprisingly, in order to differentiate their products and gain a competitive edge, manufacturers and advertisers routinely mislead

6

consumers by claiming that the efficacy of their products is backed by science or "clinically proven" (*i.e.*, "establishment claims"), when, in fact, it is not. Accordingly, Courts are wary of claims by manufacturers that their product has been scientifically proven to be effective, when those claims are false.

16. Establishment claims are held to the highest standard of proof because the message that they convey to consumers is especially strong. As the NAD has repeatedly stated, "[e]stablishment claims are powerful claims that should be reserved for products that have clinical human testing as support."[2]

17. An advertiser's health-related claims about the efficacy of a product must "be supported with 'competent and reliable scientific evidence,'" which the Federal Trade Commission (the "FTC") defines as "'tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.'"[3] As the FTC has stated, "well-controlled human clinical studies are the most reliable form of evidence."[4]

18. ***However, the Solawave tool has never been clinically studied, much less has it been "clinically proven" to provide the results Solawave claims.***

19. Instead of designing a well-controlled clinical study of the efficacy of the Solawave tool, Solawave appears to have settled for a survey of consumers' perception of using the Solawave tool. Specifically, Solawave make the following claims from its survey:

---

[2] *See, e.g.*, NAD Case Report #6952 (Aug. 27, 2021) at 10. Available here NAD Case Report 6952.pdf.

[3] FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

[4] FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B)(2), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

7

**93%** of people reported their skin looked more **vibrant and lifted** after using Solawave for 14 days.

**97%** of people reported their skin looks **healthier and more hydrated** after using Solawave for 14 days.

**93%** of people reported their skin looked **better than it did before** after using Solawave for 14 days.

Based on an independent claims validation study of 60 people over 30 days using the 4-in-1 Skincare Wand. Results may vary.

20. Assuming it exists at all, the Solawave survey is nothing more than that, a survey of consumer impressions of the Solawave tool. It is certainly not "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results."[5] There is no indication whatsoever that there was any involvement of professional expertise evaluating whether the Solawave tool was effective in providing the stated skincare benefits. Nor is there any indication that there was a control group of consumers who were give "placebos" or "sham treatments" such a non-functioning Solawave-like tool. As the FTC has determined:

> Human clinical studies should have both a treatment group and a control group. The efficacy of a product should be demonstrated by comparing the results of the treatment group to the results of the control group. Improvements over time in the treatment group alone could result from a placebo effect, spontaneous changes in subjects' health, improvements in performance on a test measure purely as the result of practice or repetition (the "practice effect"), or other variables unrelated to the product's benefits. An appropriately designed control (ideally a control using a placebo or sham treatment) helps to isolate the effects of these other variables from the effect of the treatment. When studies employ a cross-over design, in which subjects serve as their own control, they should use a sufficient wash-out period (the period during which subjects don't receive the treatment) to ensure clarity as to what is causing the observed results. A cross-over design may not be appropriate to test some hypotheses.[6]

---

[5] FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

[6] https://www.ftc.gov/system/files/ftc_gov/pdf/Health-Products-Compliance-Guidance.pdf at 16.

21. In any event, even Solawave now appears to have backed away from its Clinically Proven Claim because in the last month since October 4, 2023, the Solawave website has been scrubbed of many (but not all) of its Clinically Proven Claims. For example, the current Solawave website has eliminated from the description of the Solawave tool in the image in Paragraph 14 above the Solawave's claim that the Solawave tool is a "6x awarding-winning, *clinically-proven tool.*" (Emphasis added.) However, there still remains some references to the Clinically Proven Claim that has been ubiquitous throughout the Class Period. For example, the following Clinically Proven Claim appears in the "FAQs" section of the Solawave website under the heading "Results":

## Results

**What type of results can I see with the Radiant Renewal Skincare Wand?**

When incorporated into a regular skincare routine, the Wand can offer a multitude of cosmetic benefits. The Radiant Renewal Skincare Wand is a powerful yet non-invasive, clinically-proven skincare tool designed to help smooth fine lines, fade blemishes, decrease puffiness, and provide you with a radiant glow.

I.   **The Clinically Proven Claim is False and Designed to Deceive Consumers.**

22. Reasonable consumers understand the Clinically Proven Claim to convey that the Solawave tool has been clinically proven to improve skin conditions as alleged herein.

23. Solawave's Clinically Proven Claim, however, is patently false and misleading with respect to the Solawave tool because Solawave has not conducted a clinical study with respect to the Solawave tool and, therefore, there is no basis for Solawave's Clinically Proven Claim.

## II.     Plaintiff Purchased the Solawave Tool

24.     Plaintiff purchased a Solawave tool on November 19, 2022 on the Solawave.co website for $149.00.  Before she purchased the Solawave tool, Plaintiff reviewed and relied on Solawave's Clinically Proven Claim.  After using the Solawave tool for several weeks as directed, Plaintiff discontinued her use of the Solawave tool because it failed to improve her skin in the manner set forth in the Solawave Clinically Proven Claim.

25.     Plaintiff purchased the Solawave tool reasonably believing that it was clinically proven to improve skin conditions as set forth in the Clinically Proven Claim.

26.     Had Plaintiff known that the Solawave tool was not clinically proven to achieve the improvements in skin condition set forth in the Clinically Proven Claim, she would not have purchased the Solawave tool.  At the very least, Plaintiff would not have paid the price premium charged for the Solawave tool over the cost of normal skin moisturizers.

27.     Solawave directs that its tool be used in conjunction with a Solawave-branded moisturizer or a moisturizer of the consumer's choosing.  Thus, consumers such as Plaintiff would need to purchase a suitable moisturizer for their skin in addition to the Solawave tool.  As a consequence, the entire price of the Solawave tool represents a price premium over a skincare treatment without the Solawave tool.

## CLASS DEFINITION AND ALLEGATIONS

**New York Class**

28.     Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following subclass (the "New York Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) one or more Solawave tools – manufactured, marketed,

distributed and/or sold by Defendant which Defendant warranted as being Clinically Proven to improve skin (the "Class Product"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Class Product for resale.

29. Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any New York Class member may have suffered.

30. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by Solawave's conduct as alleged herein. The precise number of the Class members is unknown to Plaintiff but is believed to be in the thousands.

31. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Classes. The common legal and factual questions for the New York Class include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant labeled, advertised, marketed, and/or sold each Class Product as "clinically proven" to improve skin.

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Class Product as clinically proven to improve skin was and/or is false, fraudulent, deceptive, and/or misleading.

32. **Typicality**. Plaintiff's claims are typical of the claims of the members of her Class, because, *inter alia*, all the Class members have been injured through the uniform misconduct described above and were subject to Solawave's false Clinically Proven Claim.

11

Moreover, Plaintiff's claims are typical of her Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of her Class.

33. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of her Class. Plaintiff purchased a Class Product, and she was harmed by Solawave's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of Solawave's conduct, as did all members of her Class who purchased the Class Product. Plaintiff has retained counsel who are adept, sophisticated, and experienced in the field of class action litigation, and have adequate resources to fully and zealously advocate on behalf of the class.

34. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Solawave. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the members of the Class could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

35. Plaintiff seeks monetary damages, including statutory damages on behalf of the Class. Unless the Class is certified, Solawave will be allowed to profit from its deceptive practices, while Plaintiff and the Class will have suffered damages.

### COUNT I
**(New York Class - Violation of New York General Business Law Section 349)**

36. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 35 as if fully set forth herein.

37. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

38. By labeling, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members as Clinically Proven to improve skin, Solawave engaged in, and continues to engage in, deceptive acts and practices because the Class Product are not, in fact, clinically proven to improve skin in the manner claimed by Solawave.

39. In taking these actions, Solawave failed to disclose material information about its product, which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Product.

40. Solawave has deceptively labeled, advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

41. Solawave's conduct was consumer oriented.

42. Solawave engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

43. Solawave's misrepresentations were misleading in a material respect as to whether the efficacy of each Class Product is clinically proven.

13

44. Solawave knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing the Class Product and/or paying a premium price for the Class Product.

45. Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Solawave's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for a product that is not what Solawave represents it to be.

46. By reason of the foregoing, Solawave's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Solawave is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Solawave's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

47. Solawave's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Solawave willfully and/or knowingly. Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

## COUNT II
**(New York Class - Violation of New York General Business Law Section 350)**

48. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 47 as if fully set forth herein.

49. Solawave's labeling, marketing, and advertising of the Class Products is "misleading in a material respect," as it fails to disclose to consumers material information in Solawave's sole possession and, thus, is "false advertising."

50. No rational individual would purchase the Class Product at the premium price at which it is are sold in full knowledge that they are not clinically proven to improve skin, which is how Solawave markets the Class Product.

51. Solawave's advertisements and marketing of the Class Product as clinically proven to improve skin were consumer oriented.

52. Solawave's advertisements and marketing of the Class Product as clinically proven to improve skin were misleading in a material respect.

53. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by overpaying for a product that has diminished value due to its false claim of being "clinically proven."

54. Solawave's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Solawave is liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of Solawave's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Solawave as follows:

A.  Certifying this action as a class action, pursuant to FRCP 23, comprised of the Class as defined above as soon as practicable, designating Plaintiff as the named Class representative and designating the undersigned as Class Counsel.

B.  On Plaintiff's Count I, awarding against Solawave the damages that Plaintiff and the other members of the Class have suffered as a result of Solawave's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.  On Plaintiff Count II, awarding against Solawave the damages that Plaintiff and the other members of the Class have suffered as a result of Solawave's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.  On Counts I and II, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E.  Awarding Plaintiffs and their respective class such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 10, 2023
White Plains, New York

**KRAVIT SMITH LLP**

By: /s/Philip M. Smith
Philip M. Smith
75 South Broadway, Suite 400
White Plains, New York 10601
Tel.: (646) 493-8004
Fax: (917) 858-7101
psmith@kravitsmithllp.com

*Attorneys for Plaintiff*